# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARY B. B., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 24-cv-00458-SH |
| FRANK BISIGNANO,[1] Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

## OPINION AND ORDER

Pursuant to 42 U.S.C. § 405(g), Plaintiff Mary B. B. seeks judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability benefits under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381–1383f. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. For the reasons explained below, the Court affirms the Commissioner's decision denying benefits.

**I.     Disability Determination and Standard of Review**

Under the Act, an individual is disabled if she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The impairment(s) must be "of such severity that [the claimant] is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and

---

[1] Effective May 7, 2025, pursuant to Fed. R. Civ. P. 25(d), Frank Bisignano, Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 1382c(a)(3)(B).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 416.920. "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). Under the five-step process, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do her past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 416.920(a)(4)(i)–(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 416.960(c)(2).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The

Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.   Background and Procedural History

Plaintiff filed for Title XVI disability benefits on August 10, 2022. (R. 216–21.) Plaintiff alleges she has been unable to work since July 28, 2022,[2] due to lumbar spine disc disease with radiculopathy, cervical spine disc disease (status post fusion), thoracic spine disc disease, numbness and stabbing pains in arms and hands, loss of grip strength in both hands, migraine headaches, major depressive disorder, post-traumatic stress disorder ("PTSD"), and psoriasis. (R. 46, 248.) Plaintiff was 40 years old at the time of the ALJ's decision. (*See* R. 34, 216.) Plaintiff has a high school equivalent education and no past relevant work. (R. 48–49, 249–50.)

Plaintiff's claim for benefits was denied initially and on reconsideration, and she requested a hearing. (R. 114–23, 125–33.) ALJ Cindy Martin conducted an administrative hearing and issued a decision on April 3, 2024, finding Plaintiff not disabled. (R. 17–34, 42–85.) The Appeals Council denied review on July 29, 2024 (R. 1–3), rendering the Commissioner's decision final. 20 C.F.R. § 416.1481. Plaintiff appeals.

---

[2] In her application, Plaintiff alleged she has been unable to work since July 1, 2018. (R. 216.) She later amended her alleged onset date to July 28, 2022. (R. 46.)

### III. The ALJ's Decision

In her decision, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. 19.) At step two, the ALJ found Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine, degenerative disc disease of the cervical spine with bilateral radiculopathy, status post spinal cervical fusion at C5–C6 in November 2020, mild left upper extremity carpal tunnel syndrome, obesity, chronic pain disorder, depressive disorder, anxiety disorder, PTSD, and substance use disorder. (R. 19–21.) At step three, the ALJ found Plaintiff's impairments did not meet or equal a listed impairment. (R. 21–28.)

The ALJ then determined Plaintiff had the RFC to perform light work with various exertional, environmental, and non-exertional limitations. (R. 28.) The ALJ then provided a summary of the evidence that went into this finding. (R. 29–33.)

At step four, the ALJ found Plaintiff had no past relevant work. (R. 33.) At step five, based on the testimony of a Vocational Expert ("VE"), the ALJ found Plaintiff could perform occupations existing in significant numbers in the national economy, including laundry sorter, routing clerk, linen folder, semiconductor bonder, touch up screener, and "clerical sorter." (R. 33–34.) The ALJ thus found Plaintiff not disabled. (R. 34.)

### IV. Issues

Plaintiff asserts the ALJ erred by: (1) failing to consider and explain the combined effects of her physical and mental impairments (ECF No. 8 at 9–11),[3] and (2) failing to resolve a conflict between the VE's testimony and the Dictionary of Occupational Titles

---

[3] Citations refer to the page number in the Court-provided header.

(4th ed. 1991) (the "DOT") (*id.* at 11–15). The Court finds no reversible error and affirms the Commissioner's decision.

V. **Analysis**

　A. **The Combined Effects of Plaintiff's Physical and Mental Impairments**

Plaintiff argues the RFC is not supported by substantial evidence, because the ALJ failed to consider and discuss the combined effects of Plaintiff's physical and mental impairments. (*Id.* at 9–11.) Specifically, Plaintiff contends the ALJ failed to consider how Plaintiff's pain exacerbates her mental health. (*Id.* at 10.) To support this argument, Plaintiff points to statements she made to her mental health provider. (*See* R. 1579 (reporting that her herniated discs cause severe pain, limit her mobility, and make her feel "useless"); R. 1736 (reporting that she "feel[s] trapped in [her] body" due to physical limitations).) Plaintiff maintains the ALJ would have found her disabled had such analysis occurred. (ECF No. 8 at 10.)

A claimant's RFC is her "*maximum* remaining ability to do sustained work activities in an ordinary work setting" for 8 hours a day, 5 days per week, despite her medical impairments and symptoms. Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (July 2, 1996). In determining the RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion" as to the claimant's work-related limitations. *Id.* at *7. This means the ALJ must explain the basis for the limitations included in the RFC, with citations to "specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* In making this determination, the ALJ must "consider the combined effect of all of the [claimant's physical and mental] impairments without regard to whether any such impairment, if

considered separately, would be of such severity" that it could form the basis of benefits eligibility. 42 U.S.C. § 1382c(a)(3)(G); *see also* 20 C.F.R. § 416.923(c) ("In determining whether your physical or mental . . . impairments are of a sufficient medical severity that such . . . impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments . . . .").

In this case, the ALJ expressly stated that she "considered all of [Plaintiff's] medically determinable impairments, including those that are not severe, when assessing" Plaintiff's RFC. (R. 21.) The courts' usual practice "is to take a lower tribunal at its word when it declares that it has considered a matter." *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) (discussing the combination of impairments) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005)). Here, there is nothing indicating the ALJ did not do as she stated.

Instead, the decision shows the ALJ did consider the combined effect of Plaintiff's impairments. First, although the ALJ did not cite the specific treatment notes referenced by Plaintiff, the ALJ cites other evidence that demonstrates she considered the interplay between Plaintiff's pain and anxiety. (R. 32 (ALJ noting Plaintiff's report to consultative examiner that she has panic attacks in public because "she has been down and not around people for so long," and that "anxiety, pain, but mainly anxiety" prevent her from working (quoting R. 1692)).) Second, the ALJ provided a detailed review of the record evidence in determining Plaintiff's RFC. (*See* R. 21–33.) Regarding Plaintiff's mental impairments, the ALJ explained that Plaintiff's mental status examinations were within normal limits throughout the relevant period. (R. 29 (citing R. 1532, 1584, 1588, 1592, 1594, 1749, 1757, 1763, 2148).) Regarding Plaintiff's physical impairments, the ALJ noted that Plaintiff regularly complained of back and neck pain that radiated to the shoulders, buttocks, and

6

legs.  (R. 30 (citing R. 1792, 1795, 1799, 1802, 1841, 1847, 1852).)  However, earlier in the decision the ALJ also explained that the imaging of record revealed only mild degenerative changes in the lumbar spine; mild arthrosis with no evidence of significant stenosis in the cervical spine; and no spinal stenosis or nerve root compression at C3–C4, C4–C5, and C5–C6.  (R. 22–23, 30 (citing R. 1497, 1520, 1926).)

Although the ALJ generally addressed Plaintiff's physical and mental impairments separately, this "does not mean the ALJ failed to consider them in combination."  *See Shirley v. Apfel*, 131 F.3d 152 (table), 1997 WL 727549, at *2 (10th Cir. Nov. 21, 1997) (unpublished)[4] (rejecting argument that ALJ failed to consider combined effect of physical and mental impairments, where ALJ first discussed physical impairments then discussed mental impairments).  The Court can follow the ALJ's reasoning and concludes the RFC is supported by substantial evidence.  *See generally Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. . . . [W]e cannot insist on technical perfection.").

B.      **Apparent Conflict between VE Testimony and the DOT**

Plaintiff next argues the ALJ erred in relying on VE testimony at step five without resolving an apparent conflict between that testimony and the DOT.  (ECF No. 8 at 11–15.)  This argument is not well-developed, but Plaintiff seemingly contends that the DOT's occupational descriptions are outdated and that the VE-identified jobs "may be performed with more modern tools or processes."  (*Id.* at 13.)  But because the VE "never

---

[4] Unpublished decisions are not precedential, but they may be cited for their persuasive value.  10th Cir. R.  32.1(A).

7

clarified if the occupations listed are performed as stated in the DOT, or if they are performed with more modern tools or processes," an apparent conflict was created that the ALJ was required to resolve. (*Id.* at 14–15.) The Court finds no reversible error.

### 1. Step Five—Generally

At step five, it is the Commissioner's burden "to show that the claimant retains sufficient RFC to perform work in the national economy, given her age, education, and work experience." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett*, 395 F.3d at 1171 (alteration omitted)). An ALJ may rely on VE testimony to satisfy the step-five burden and identify jobs that a claimant can perform. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000); *Winfrey v. Chater*, 92 F.3d 1017, 1025 (10th Cir. 1996). The Commissioner meets his burden if the decision is supported by substantial evidence. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

In this case, the ALJ posed a hypothetical question to the VE that matched the RFC, and the VE identified three light jobs a hypothetical person of Plaintiff's age, education, and work experience could perform: (1) laundry sorter with 98,000 jobs in the national economy;[5] (2) routing clerk, with 117,000 jobs;[6] and (3) linen folder, with 72,000 jobs.[7] (R. 73–77.) On the ALJ's request, the VE additionally identified three sedentary jobs a hypothetical person of Plaintiff's age, education, and work experience could perform: (1) semi-conductor bonder, with 21,000 jobs in the national economy;[8] (2) touch-up

---

[5] DOT § 361.687-014, 1991 WL 672991.
[6] DOT § 222.687-022, 1991 WL 672133.
[7] DOT § 369.687-018, 1991 WL 673072.
[8] DOT § 726.685-066, 1991 WL 679631.

screener, with 37,000 jobs;[9] and (3) addresser, with 32,000 jobs.[10] (R. 74.) Based on this testimony, the ALJ concluded Plaintiff could perform jobs that existed in significant numbers in the national economy. (R. 34.)

### 2. The ALJ Erred by Not Asking About Any Possible Conflict

Plaintiff argues that the ALJ was supposed to inquire into possible conflicts between the DOT and the VE's evidence (ECF No. 8 at 12), and she is correct. That is, the then-applicable Social Security Ruling imposed on the ALJ "an affirmative responsibility to ask about any possible conflict between" a VE's evidence and the DOT, including a duty to "[a]sk the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT . . . ." SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000).[11]

It is undisputed that the ALJ never asked this question of the VE. (*See* R. 73–82.) This was an error. *See Poppa v. Astrue*, 569 F.3d 1167, 1173 (10th Cir. 2009) ("the ALJ erred by not inquiring about whether there were any conflicts between the VE's testimony about the job requirements for the jobs identified and the job descriptions in the DOT"); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (collecting cases).

But finding an error does not end this Court's inquiry. Instead, the Court must determine whether that error was harmless.

---

[9] DOT § 726.684-110, 1991 WL 679616.

[10] The ALJ and VE referred to this occupation as a "clerical sorter," but the cited DOT section uses the term, "addresser." DOT § 209.587-010, 1991 WL 671797.

[11] Effective January 6, 2025, the SSA rescinded SSR 00-4p and replaced it with SSR 24-3p. SSR 24-3p, 89 Fed. Reg. 97158-01 (Dec. 6, 2024). SSR 00-4p remains applicable to this case, as it was in effect when Plaintiff's claim was filed and adjudicated. *See id.* at 97159 n.1 ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.").

### 3. The ALJ's Error Was Harmless Where No Conflict Has Been Identified

#### a. Resolving Conflicts Between VE and DOT—Generally

While an ALJ can rely on VE testimony at step five, such reliance has limits. An ALJ has a duty to develop the record, which includes questioning the VE about the source of their opinions and any deviations from publications like the DOT. *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999). Thus, "the ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Id.*; *see also* SSR 00-4p, 2000 WL 1898704, at *2 ("When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a . . . decision about whether the claimant is disabled.").

However, not every discrepancy between an expert's testimony and the DOT amounts to an apparent conflict requiring further explanation. *See Segovia v. Astrue*, 226 F. App'x 801, 804 (10th Cir. 2007) (unpublished) (noting "all kinds of implicit conflicts are possible" and the DOT "cannot satisfactorily answer every such situation") (quoting *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000)). Only conflicts that are "apparent or obvious" require an ALJ to ask the VE "more specific follow-up questions." *Brown v. Berryhill*, No. 17-cv-00556-GKF-GBC, 2019 WL 2488730, at *6 (N.D. Okla. Mar. 11, 2019). A conflict is apparent if there is a "reasonably ascertainable" discrepancy between the DOT and the VE's testimony. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1365 (11th Cir. 2018) (explaining an apparent conflict exists when "a reasonable

comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case").

So, while SSR 00-04p required the ALJ to ask the VE to identify any possible conflicts, such a procedural error is not necessarily fatal. Instead, where "there is no apparent conflict . . . between the DOT and the VE's testimony," the "ALJ's error in not inquiring about potential conflicts is harmless." *Poppa*, 569 F.3d at 1174; *see also Strickland v. Astrue*, 496 F. App'x 826, 833 (10th Cir. 2012) (unpublished) ("While we agree generally that the ALJ should have inquired about conflicts, Claimant has not pointed to any information in the DOT that creates a conflict.").

### b. Plaintiff Has Identified No Apparent Conflicts

As in *Strickland*, Plaintiff has failed to point to any information in the DOT that creates a conflict with the VE's testimony in this case. Instead, Plaintiff lists the DOT's occupational description for each job and states—without explanation or support—"In each of the occupational descriptions . . . , there are descriptions of tasks an employee would be responsible for that involve technology, machinery, or methods that could have become developed since the publication of the DOT." (ECF No. 8 at 14.) Plaintiff then argues there was no evidence "whether the occupations are [performed] with more modern tools or practices and if the Claimant would be able to [perform] these occupations with the modern tools and practices. (*Id*. at 15.)

The age of the DOT, alone, is not a sufficient basis to assert an apparent conflict. The ALJ (and the VE) are explicitly allowed to rely on the occupational descriptions contained in the DOT. *See* 20 C.F.R. § 416.966(d)(1) (noting the SSA "will take administrative notice of reliable job information available from various governmental and other publications," including the DOT); *see also* SSR 00-4p, 2000 WL 1898704, at *2

11

(same). This is true despite the DOT's outdatedness. *See Garcia v. Saul*, No. 19-395, 2020 WL 4569441, at \*14 (D.N.M. Aug. 7, 2020) (rejecting argument that VE's reliance on outdated occupational description was reversible error at step five); *Leo v. Saul*, No. 18-cv-00977, 2020 WL 888600, at \*6–7 (D.N.M. Feb. 24, 2020) (same).

Plaintiff has identified no reasonably ascertainable discrepancy between the DOT job descriptions and any portion of the VE's testimony. She has provided no facts supporting her position, or even much argument. She has cited no cases where other courts have found an apparent conflict based on an outdated DOT job description.[12]

Plaintiff has shown no reversible error. *See Valdez v. Kijakazi*, No. 20-1263, 2022 WL 278731, at \*8 (D.N.M. Jan. 31, 2022), ("Because it was Plaintiff's burden to establish

---

[12] In fact, some courts <u>have</u> found one of the jobs—clerical sorter/addresser—to be obsolete as currently described in the DOT. *See, e.g., Michael v. Kijakazi*, No. 22-CV-77, 2023 WL 4280809, at \*4 (E.D.N.C. June 12, 2023) (finding apparent conflict "between the VE's testimony and the implausibility of that testimony based on the DOT definition for the addresser job"); *Tamara C. v. Saul*, 18-CV-00118, 2020 WL 1276579, at \*3 (D. Utah Mar. 17, 2020) (finding addresser job obsolete, and concluding job was not available in the national economy). *Cf. Royal C. H. v. Dudek*, No. 24-2413, 2025 WL 1248306, at \*5 (D. Kan. Apr. 29, 2025) (finding no step five error where VE testified that addresser job has become more modernized, but its processes are still the same, and the jobs available in the national economy reflect those jobs available with modernized tools). *But see Garcia*, 2020 WL 4569441, at \*14 (finding VE was entitled to rely on addresser DOT description, despite its outdatedness); *Leo*, 2020 WL 888600, at \*6–7 (same). Indeed, just a few months after the ALJ's decision, the Social Security Administration added "addresser" to the list of jobs that may create an apparent conflict. *See* Press Release, Social Security Updates Occupations List Used in Disability Evaluation Process, June 24, 2024, available at https://www.ssa.gov/news/press/releases/2024/#6-2024-2 (last visited June 3, 2025); 4 Soc. Sec. Disab. Claims Prac. & Proc. Appendix 1C (2nd ed.) (providing full text of EM-24027 as issued on June 22, 2024).

However, even if Plaintiff had made this argument, it would fail. If the clerical sorter/addresser job is excluded, there still remain 345,000 jobs in the national economy, as cited by the ALJ. (R. 33–34.) These numbers are sufficiently large that no reasonable factfinder could find them to lack sufficient significance in the national economy. *See Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (unpublished) (so finding for 152,000 jobs nationally).

that there was an apparent conflict between the [VE's] testimony and the DOT, and because she has failed to establish such a conflict, the Court rejects Plaintiff's challenge on this point."), *R&R adopted*, 2022 WL 683024 (Mar. 8, 2022).

## VI. Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **AFFIRMED**.

**SO ORDERED** this 6th day of June, 2025.

_____
SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT